**Henry M. SUCKLE, M.D., Plaintiff-Appellant,**

v.

**MADISON GENERAL HOSPITAL, Defendant-Appellee.**

No. 73–1931.

United States Court of Appeals, Seventh Circuit.

Heard April 8, 1974.

Decided July 17, 1974.

Rehearing Denied Aug. 15, 1974.

Robert F. Hanley, David C. Roston, Chicago, Ill., for plaintiff-appellant.

Eugene O. Gehl, Willard S. Stafford, Madison, Wis., for defendant-appellee.

Before HASTINGS, Senior Circuit Judge, CUMMINGS, Circuit Judge, and NOLAND, District Judge.*

CUMMINGS, Circuit Judge.

The complaint herein was brought under the Civil Rights Act (42 U.S.C. §§ 1983 and 1985) by a neurological surgeon seeking reinstatement to the staff of Madison General Hospital in Madison, Wisconsin.

After being certified by the American Board of Neurological Surgeons in 1948, plaintiff limited his practice to the field of neurological surgery. He was a member of the medical staff of St. Mary's Hospital and Methodist Hospital in Madison but attended and treated most of his surgical and clinical patients at Madison General, where he served as Chief of Staff for three years.

According to the complaint, in 1967 the defendant hospital appointed a Bed Utilization Committee of the medical staff to investigate the cause of a shortage of beds in the hospital. During that year, plaintiff's patients utilized more hospital beds than those of any other doctor. After various internal investigations, the Executive and Credentials Committee of the medical staff at the defendant hospital made the following recommendation to the hospital's Board of Directors on January 6, 1969:

"The Executive and Credentials Committee recommended that Dr. Henry M. Suckle be asked to resign voluntarily from the medical staff of Madison General Hospital, and that any reapplication not be considered until after three years. The Committee suggests that one of these years be spent in postgraduate neurosurgical training in an accredited program.

"If this recommendation is not accepted by Dr. Suckle, the Committee recommends to the Board of Directors at their January 22, 1969 meeting that Dr. Suckle not be reappointed to the medical staff at Madison General Hospital."

At its January 22, 1969, meeting, defendant's Board of Directors decided not to renew plaintiff's appointment, precipitating this lawsuit.

The gravamen of the complaint is that the hospital employed improper procedures in dropping plaintiff from its staff, thus depriving him of due process of law in violation of the Fourteenth Amendment. The hospital's acts were stated to be committed under the color of state law, and this was later conceded by defendant (362 F.Supp. at 1199).

After a trial on the merits, the district court issued an exhaustive opinion concluding with an order dismissing the action on its merits. 362 F.Supp. 1196. The district court observed that on January 7, 1969, defendant's chief of staff proffered plaintiff an opportunity to appear before the entire active medical staff. Without explanation, plaintiff declined to do so. The court concluded that he was barred from judicial relief because he declined the hearing before the active medical staff without inquiring whether its proceedings were to be based on a specific detailed set of charges related to particular cases or requesting that they be so based. The court concluded that although proceedings up to January 7 did not comply with due process requirements, the plaintiff probably would have received constitutionally adequate treatment by the staff if this inquiry had been answered affirmatively. 362 F.Supp. at 1222. For somewhat different reasons, we affirm.

■ Under defendant's bylaws, to protect the public interest, appointments to its staff were to be made by the Board of Directors of the hospital for a period of only one year. Although the district court found that a member of the medial staff could realistically expect to continue as a member for an in-

* District Judge James E. Noland of the Southern District of Indiana is sitting by designation.

definite period of time in the absence of cause for nonrenewal, and that procedural protections were guaranteed by hospital bylaws (362 F.Supp. at 1199), the opinion below and plaintiff's briefs point to nothing in state law suggesting that his expectancy was a claim of entitlement amounting to a property interest for due process purposes under Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 33 L.Ed.2d 570. Procedural protections or the lack thereof do not determine whether a property right exists. Arnett v. Kennedy, 416 U.S. 134, 94 S. Ct. 1633, 40 L.Ed.2d 15; Adams v. Walker, 492 F.2d 1003, 1006 (7th Cir. 1974); Jeffries v. Turkey Run Cons. School District, 492 F.2d 1, 3 (7th Cir. 1974). Rather, plaintiff must show a substantive restriction on the hospital's discretion, namely, that reappointment may be denied only for certain reasons under state law. Procedural protections may be persuasive, for they suggest that there are factual issues which matter. But if it is proper under state law for the hospital to deny reappointment regardless of what is shown at a hearing, then no property right exists.

Similarly, under Shirck v. Thomas, 486 F.2d 691 (7th Cir. 1973) and Adams v. Walker, *supra*, 492 F.2d at 1007 et seq., the defendant's statements that the plaintiff did not do his job well do not deprive him of a liberty interest which would activate the due process clause. We are unwilling to make an exception to the rule of those cases merely because plaintiff is a surgeon.

Therefore, affirmance might well be warranted on the ground that plaintiff had no interest to which due process protection attached. But we do not rest our decision on this ground because it does not appear that the issue was seriously contested below. Although it seems clear that no liberty rights were taken, plaintiff might have shown a property right had he been on notice to develop the issue more fully.

■■ Assuming that plaintiff had a sufficient property or liberty interest to guarantee him the procedural protections of the Fourteenth Amendment, the hearing offered to plaintiff before defendant's entire active medical staff was not inherently deficient. We agree with Judge Doyle that lodging the decision-making function in the medical staff was constitutionally permissible. As he stated:

"Implicit in this conclusion is the proposition that the Fourteenth Amendment is not automatically offended despite the realistic possibility, even probability, that among the members of the medical staff there are some who harbor resentment or jealousy, and others who have formed personal evaluations in the court of experience over the years with the physician in question. Indeed, there may well be some members of the staff who have not been free of advance impressions, whether accurate or distorted, with respect to the merits of the controversy, but in my view, this circumstance should not automatically bar them from participation in the decision-making process. I do not believe that the constitution requires the decision-making process to be as antiseptic in this context as it is required to be, for example, in a criminal prosecution." 362 F.Supp. at 1209–1210.

This conclusion is reinforced by the likelihood that in a tribunal with 144 members, personal enemies would be balanced by personal friends. We also agree with Judge Doyle that a panel of 144 is not so inherently unwieldy as to deny due process. The hospital was free to offer plaintiff a jury of all his peers.

The offer of a hearing was sketchy and did not specify all the procedural details to be followed; we accept the trial court's finding that plaintiff did not request a clarification. Judge Doyle felt obligated to determine what procedures were reasonably implied in the offer, and what additional procedural safeguards plaintiff could reasonably have expected to be granted if requested. He

felt obliged to undertake this "extraordinarily difficult" decision because the offer did not explicitly set forth all the procedural rules applicable to the hearing, showing explicity that the hearing would fully comply with the requirements of due process. 362 F.Supp. at 1218.

There is an easier ground of decision. We find it controlling that the offer of a hearing set forth no procedural details which clearly precluded compliance with due process. Under these circumstances plaintiff should have asked for any additional safeguards he desired. Until the question whether a particular procedural rule will be applied is directly posed, the likelihood is that a committee of doctors will not have thought about it, for it is not a common responsibility of the medical profession to administer due process hearings. Plaintiff complains that the decision below required him to speculate what the response to his request for additional safeguards might have been. We hold that when such a hearing is offered, the offeree should assume that it will be a fair hearing until the offeror indicates otherwise. Cf. Miller v. School District Number 167, 495 F.2d 658, 660 (7th Cir. 1974), where the hearing offered plaintiff was clearly insufficient under the law at the time the hearing was offered.

Plaintiff relies on cases holding that state administrative remedies need be exhausted only when the state clearly shows that the remedy is adequate and effective. We have no quarrel with this principle, but plaintiff attempts to misapply it in this context. We disagree with cases that have accepted plaintiff's application of the rule, such as Hayes v. Cape Henlopen School District, 341 F. Supp. 823, 829–833 (D.Del.1972).

Plaintiff has no federal right to be on the staff of Madison General Hospital. The only federal right he claims is the right to a due process hearing before denial of reappointment. It is therefore incorrect to characterize the proffered hearing as a remedy which must be exhausted; for federal purposes, it is the right which he seeks. He cannot sue in federal court to secure a right which he declined when it was voluntarily offered to him.

Exhaustion of remedies analysis would be relevant, if at all, only to the steps by which plaintiff could have secured a due process hearing. Until he told the hospital what procedures he wanted, it could not know what rights he was claiming. It never indicated that his rights would be denied, and until there was such an indication, there was nothing to be remedied. The inquiry required of plaintiff by this opinion does not amount to exhaustion of remedies; rather, it is necessary to demonstrate the existence of a case or controversy.

In our view the medical staff hearing offered on January 7th was neither explicitly nor obviously insufficient. Plaintiff was not entitled to reject it out of hand merely because it might turn out to be inadequate. Judicial relief is not warranted where a plaintiff rejects a seemingly adequate hearing without inquiring about procedural details that he considers crucial.

Judgment affirmed.