DEPARTMENT OF HEALTH & SOCIAL SERVICES, Respondent, v. STATE PERSONNEL BOARD, Appellant: FERGUSON, Intervenor-Appellant.

*No. 76–116.   Argued June 6, 1978.——Decided June 30, 1978.*
(Also reported in 267 N.W.2d 644.)

For the appellant there was a brief and oral argument by *Keith R. Clifford* of Madison.

For the respondent the cause was argued by *David C. Rice*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

For Donald R. Ferguson there were briefs by *Richard V. Graylow, Robert J. Arnot, David B. Gaebler*, and *Lawton & Cates* of Madison, and oral argument by *Mr. Graylow*.

DAY, J. This is an appeal from a circuit court order in a ch. 227 review of proceedings under the civil service law before the appellant, State Personnel Board (board). The board ordered the respondent Department of Health and Social Services (D.H.S.S.) to immediately reinstate appellant Donald R. Ferguson, a former employee of D.H.S.S. The circuit court reversed the board's order on the theory that the board lacked jurisdiction to hear Mr. Ferguson's case because he was not an employee ". . . with permanent status in class. . . ." Sec. 16.05 (1) (e), Stats. 1975.[1]

There are four issues on this appeal:

1. Did the board have jurisdiction under sec. 16.05 (1) (e), Stats. 1975 to hear Mr. Ferguson's appeal alleging that his discharge from the classified service was not for just cause under sec. 16.28 (1) (a), Stats. 1975?

2. Is Mr. Ferguson denied fourteenth amentment equal protection because state employees receiving intra-departmental promotions retain their tenure rights, but state employees receiving inter-departmental promotions, such as Mr. Ferguson, do not?

3. Did the termination of Mr. Ferguson's employment by the department deprive him of a property interest protected by fourteenth amendment due process?

---

[1] The board has authority to,

"Hear appeals of employes with permanent status in class, from decisions of appointing authorities when such decisions relate to . . . discharges, . . . but only when it is alleged that such decision was not based on just cause. . . ." Sec. 16.05 (1) (e), Stats. 1975.

4. Did the reasons given by the department for terminating Mr. Ferguson deprive him of a liberty interest protected by fourteenth amendment due process?

We hold that the board did not have jurisdiction to hear Mr. Ferguson's appeal and that Mr. Ferguson's discharge does not deprive him of any constitutional rights.

The facts of this case as set forth in the trial court's decision are undisputed:

"On August 14, 1970, the Appellant, Donald R. Ferguson, commenced his employment with the State of Wisconsin as a Management Information Specialist 2 with the University of Wisconsin. He satisfactorily completed an original probationary period, and, thereby, acquired permanent status in class in the classified service of the State. On April 23, 1973, Appellant received a promotional appointment to Information Specialist 3 position with the Department of Health and Social Services.

"On October 8, 1973, approximately five and one-half months later, the appellant was advised that his employment with the Department was terminated, as of October 19, 1973, a few days before the end of his probationary period of six months.

"The letter notifying him of such action stated the reasons to be as follows:

"1. Failure to handle assignments at a level required for a Management Information Specialist 3.

"2. Lack of initiative in learning the scope of the job.

"3. Failure to follow directions in carrying out assignments or asking for clarification when assignments aren't clear.

"4. A continued tardiness, including tardiness when working with the counties.

"Appellant's discharge from the Department was, in practical effect, discharge from State employment."

Mr. Ferguson appealed to the board for a hearing and a determination of whether he was discharged for just cause. On December 11, 1975 the board issued its final opinion and order, concluding that Mr. Ferguson had

been improperly terminated and ordering that he be reinstated forthwith as an Information Specialist 2 at D.H.S.S. with full back pay, seniority and benefits.

On January 8, 1976 D.H.S.S. petitioned the Dane County circuit court for review of the board's decision. On July 9, 1976 the circuit court entered an order reversing the board's order.

### Board's Jurisdiction.

The major issue in this case is whether the board had jurisdiction to hear Mr. Ferguson's appeal. The board has authority to,

"Hear appeals of employes with permanent status in class, from decisions of appointing authorities when such decisions relate to . . . discharges, . . . but only when it is alleged that such decision was not based on just cause. . . ." Sec. 16.05 (1) (e), Stats. 1975.

Sec. 16.28 (1) (a), Stats. 1975 provides that,

"An employee with permanent status in class may be . . . discharged . . . only for just cause. This paragraph shall apply to all employes with permanent status in class in the classified service. . . ."

Based on the above two statutes, the board could only hear Mr. Ferguson's appeal if he had "permanent status in class" and if it was alleged that his discharge was not for "just cause." In this case the problem phrase is "permanent status in class." Sec. 16.22 (1) (a), Stats. 1975 provides that,

". . . All original and all promotional appointments to permanent . . . positions in the classified service shall be for a probationary period of 6 months. . . . Dismissal may be made at any time during such periods."

The exception to this rule appears in sec. 16.22 (1) (d), Stats., providing that,

". . . (d) A promotion or other change in job status within a department shall not affect the permanent status in class and rights, previously acquired by an employe within such department."

Sec. 16.22 (1) (a) and (d), Stats., requires that promotional appointments in the classified service are subject to a six month probationary period, and possible discharge from the classified service. If an employe is promoted within a department, he may be dismissed from the new position during the probationary period. If dismissal from the new position occurs, the employe must be reinstated to his former position or a similar position within that department. There is no effect on, ". . . permanent status in class and rights, previously acquired," if the promotion is intra-departmental. If the legislature had intended a different result they would not have included the words "within a department" and "within such department" in sec. 16.22 (1) (d). If the employe is discharged during his probationary period in an inter-departmental promotion, his dismissal results in his discharge from the classified service.

It is undisputed that Mr. Ferguson had not been employed by D.H.S.S. in his new position for the six month probationary period at the time of his discharge. Therefore, he did not have permanent status in class and the board did not have jurisdiction to hear his appeal.

The board admits that Mr. Ferguson did not have permanent status in class in his promotional position, but it claims that he did have tenure rights based on his old position. From this fact, the board argues that Mr. Ferguson could only be discharged without cause from his new position with D.H.S.S. and must be reinstated to a job in his former classification. This argument ignores the requirement of sec. 16.05 (1) (e), Stats., that the board can only hear appeals of employes with permanent

status in class. Pers. 13.11, Wis. Adm. Code defines permanent status in class as,

".... the status of an employe in a position who has served a qualifying period to attain a permanent position for that class."

This definition requires that status in class relate to a class in which the employe is then serving, not a position in which he has served in the past.

Mr. Ferguson did not have permanent status in class as an Information Specialist 3 at the time of his discharge and the board did not have jurisdiction to hear his appeal.

Mr. Ferguson's argument that he still retains permanent status in class in his old position of Information Specialist 2 is also undercut by sec. 16.22(4), Stats. 1975. That section provides in pertinent part that, ".... an employee who transfers from one employing unit to another ... may be required by the appointing authority to serve a probationary period. . . ." This subsection further demonstrates that a state employe does not, in all circumstances, retain job security following the six month probationary period. This is especially true where the employe has transferred from one department to another.

The board and Mr. Ferguson argue that the above statutory interpretation is at odds with the policy of the civil service laws. Sec. 16.01(2), Stats. 1975 provides that,

".... It is the policy of the state . . . to assure that positions in the classified service are filled through methods which apply the merit principle, with adequate civil service safeguards."

We agree that the statutory interpretation discussed here offers no civil service safeguard to an employe who accepts an inter-departmental promotion. Nevertheless,

the specific statutory mandate is unambiguous and more general policy considerations can not control.

In the process of deciding to hear Mr. Ferguson's appeal the board determined that Pers. 14.03(2), Adm. Code[2] was invalid. That section provides that an employe who receives an inter-departmental promotion will be required to serve a probationary period, during which time he may be dismissed without the right of appeal. The board reasoned that the regulation was invalid as contrary to a proper interpretation of secs. 16.01, 16.22 and 16.28. The board erred. The administrative regulation correctly interprets the statutes.

### Equal Protection.

Mr. Ferguson and the board contend that sec. 16.22, Stats., violates fourteenth amendment equal protection if it is interpreted to provide tenure rights to state employes promoted within a department while denying those same rights to employes promoted between departments.

"There are a number of presumptions and maxims favoring the constitutionality of a statute. All statutes are presumed constitutional and will be held to be so unless proven otherwise beyond a reasonable doubt by the party attacking the statute. The cardinal rule of statutory construction is to preserve a statute and find it constitutional if it is at all possible to do so. This court is not concerned with the political, economic or social wisdom of the act under consideration. Our only duty is to determine whether the statute clearly contravenes some constitutional provision." *State ex rel. Ft. Howard Paper v. Lake Dist. Bd.,* 82 Wis.2d 491, 505, 263 N.W.2d 178 (1978).

[2] "14.03 . . . (2) *FOR PROMOTION BETWEEN AGENCIES.* In accordance with section 16.22(1), Wis. Stats., the employe shall be required to serve a probationary period. At any time during this period the appointing authority may dismiss the promoted employe from the service without the right of appeal. . . ."

The tests to determine whether a statutory classification denies equal protection were also outlined in *State v. Duffy,* 54 Wis.2d 61, 65, 66, 194 N.W.2d 624 (1972).

"Equal protection of the law is denied only where the legislature has made irrational or arbitrary classifications. *Town of Vanden Broek v. Reitz* (1971), 53 Wis.2d 87, 191 N.W.2d 913; *State ex rel. Johnson v. Cady* (1971), 50 Wis.2d 540, 185 N.W.2d 306; *State ex rel. Schopf v. Schubert* (1970), 45 Wis.2d 644, 173 N.W.2d 673. The test is not whether some inequality results from the classification, *Lindsley v. Natural Carbonic Gas Co.* (1911), 220 U.S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, but whether there exists any reasonable basis to justify the classification. *McGowan v. Maryland* (1961), 336 U.S. 420, 81 Sup. Ct. 1101, 6 L. Ed.2d 393. The instant case is not a situation involving criteria which is inherently 'suspect.' See *Graham v. Richardson* (1971), 403 U.S. 365, 91 Sup. Ct. 1848, 29 L. Ed.2d 534."

In this case the statutory distinction between inter-departmental and intra-departmental promotions must be upheld if there is a reasonable basis for the distinction. There is such a reasonable basis. The legislature may have determined that employes promoted within a department needed protection from the familiar bureaucratic tactic of "up and out." With this practice, an employe is encouraged to take a promotion, and after the promotion is dismissed during the probationary period in the new position.

Mr. Ferguson contends that this practice of "up and out" is just as much a problem with inter-departmental promotions because in either case the supervisor can only encourage the employe to take the promotion. Even if promotions are completely voluntary, this argument misses the point. With intra-departmental promotions the supervisor who encourages the promotion may be the same supervisor who evaluates the employe during the probationary period and who wants to get rid of the

employe to begin with. With an inter-departmental transfer the supervisor who evaluates the employe during the probationary period can not be the same one who encouraged the promotion and who wanted to dismiss the employe from the original position.

The bureaucratic practice of "up and out" is a rational basis for distinguishing between intra-department and inter-departmental transfers. Distinguishing between the two groups does not offend equal protection.

*Property Interest.*

Mr. Ferguson contends that Pers. 14.03 Wis. Adm. Code[3] unconstitutionally deprives him of a due process property interest in continued public employment. The type of property interest entitled to due process protection was described in *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed.2d 548 (1972). Roth was an assistant professor with no tenure rights who was informed that he would not be hired for the next academic year. The school gave no reasons for not rehiring him, nor did they give him any sort of hearing. Roth claimed that the failure to rehire him under these circumstances deprived him of his fourteenth amendment due process rights. The U.S. Supreme Court disagreed.

In reaching its decision the court stated:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. . . .

---

[3] See fn. 2, *supra.*

"Property interests of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law —rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in Goldberg v. Kelly (397 U.S. 254), had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were in fact within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so.

"Just as the welfare recipients 'property' interest in welfare payments was created and defined by statutory terms, so the respondent's 'property' interest in employment at Wisconsin State University-Oshkosh was created and defined by the terms of his appointment." *Roth* at 408 U.S. 577.

Whether there is a protected property interest is a question of state law that may be determined by an examination of the particular statute or ordinance in question. *Bishop v. Wood*, 426 U.S. 341, 344, 345, 96 S. Ct. 2074, 48 L. Ed.2d 684 (1976).

In this case if Mr. Ferguson does not have tenure rights under Wisconsin's civil service laws, then he does not have constitutional tenure rights either. The constitutional tenure rights must be based on state law. If the Wisconsin civil service law does not support Mr. Ferguson's continued tenure then the hope of continued employment can only be a "unilateral expectation" on his part. *Roth* at 408 U.S. 577.

Mr. Ferguson was not an "employe with permanent status in class," who could only be discharged for "just cause" (sec. 16.28(1)(a)). He could be discharged at any time during the probationary period. Sec. 16.22(1) (a). Because Mr. Ferguson was not an employe with permanent status in class at the time of his discharge,

he does not have a due process property interest. There is no basis in state law to support the existence of the property interest.

## Due Process Liberty Interest.

Mr. Ferguson contends that he has been deprived of a due process liberty interest because of the reasons that D.H.S.S. gave for dismissing him.

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 27 L. Ed.2d 515, 519, 91 S. Ct. 507 (1971).

A due process liberty interest may be affected when a person loses their job and is charged with wrongdoing. For an employe to demonstrate such a loss of liberty, they must have: (1) suffered a stigma or other disability that forecloses their ability to take other employment, or (2) had their good name, reputation, honor or integrity impugned in such a way that it might seriously damage their standing and associations in the community. *Roth, supra* at 408 U.S. 573, 574; *State ex rel. DeLuca v. Common Council,* 72 Wis.2d 672, 678, 679, 242 N.W.2d 689 (1976).

In *Colaizzi v. Walker,* 542 F.2d 969 (7th Cir. 1976), there was a denial of a liberty interest where the governor of Illinois dismissed public officials based on a charge that they had abused their positions by trying to force an employer to dismiss criminal charges against one of his employes.

In *Adams v. Walker,* 492 F.2d 1003 (7th Cir. 1974), no denial of a liberty interest was found where an official was charged with incompetence, neglect of duty and malfeasance in office. These terms were used to satisfy the

requirements of the Illinois Constitution for removal of officers.

In *Jeffries v. Turkey Run Consolidated School Dist.*, 492 F.2d 1 (7th Cir. 1974), the court found no denial of a liberty interest where a teacher was charged with openly contradicting another teacher's directives to students and with refusing to follow a suggested revised instruction schedule.

In *Suckle v. Madison General Hospital*, 499 F.2d 1364 (7th Cir. 1974) a doctor was dismissed from his job under circumstances suggesting that he did not do his job well and that he was in need of further training. The court found no constitutionally protected liberty interest.

In *Shirck v. Thomas*, 486 F.2d 691 (7th Cir. 1973) a teacher was discharged for failing to coordinate her teaching with another teacher and for making students feel that their learning difficulties were due to the inferior methods used by the other teacher. In failing to find a protected liberty interest the court stated that,

"The fact that nonretention has unquestionably made plaintiff less attractive to other employers does not amount to a constitutional deprivation of 'liberty.' This much is plainly settled by Roth and Sindermann. In our opinion, the adverse impact of the nonrenewal decision was not aggravated either by the fact that defendants gave plaintiff a written statement of reasons for their action or by the content of that statement. Assuming, as the record indicates that those reasons were not published to persons who did not participate in the nonrenewal decision, they could create no greater stigma than if the action had not been explained at all." *Shirck* at 486 F.2d 693. (Footnotes omitted.)

Moreover, public employers should not be discouraged from giving their reasons for dismissing an employe. This policy is codified in sec. 16.22(1)(a), Stats.,[4] which

---

[4] The pertinent part of sec. 16.22(1)(a) reads as follows:

requires that the appointing authority give the director of the bureau of personnel and the employe reasons for dismissing the employe during the probationary period.

In this case the reasons for dismissal could be summarized as follows: (1) Failure to handle assignments at the level required; (2) Lack of initiative in learning the scope of the job; (3) Failure to follow directions or ask for clarification of assignments; and (4) Continued tardiness. These charges do not affect good name, honor or integrity in such a way that standing in the community is seriously damaged. Mr. Ferguson argues that these reasons given for dismissal could conceivably affect future employment opportunities. *Roth* at 408 U.S. 573, 574. However, the reasons are no more serious than those in *Adams, supra,* or *Suckle, supra,* where there was no deprivation of a liberty interest.

D.H.S.S. was statutorily required to give the reason for the dismissal. The reasons given by D.H.S.S. for dismissing Ferguson do not foreclose future employment opportunities and do not affect any constitutionally protected liberty interest.

*By the Court.*—Order affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The majority concludes that an employee with permanent status in class who transfers to a different department to serve a probationary period does not have any protections of the civil service statutes based on his prior position.[1] The majority states that it reaches this con-

". . . Dismissal may be made at any time during such [probationary] periods. Upon such dismissal, the appointing authority shall forthwith report to the director and to the employe removed, his action and the reasons therefor."

[1] The majority upholds the validity of Pers. 14.03(2), Admin. Code, which allows such an employee to be "dismissed *from the service* without the right of appeal." [Emphasis added.] Thus an

clusion because "the specific statutory mandate is unambiguous and more general policy considerations can not control." I respectfully dissent. Neither sec. 16.22 (1) (d), relied on by the majority, nor any of the other provisions of ch. 16, Stats., deals explicitly with the civil service protections afforded employees who make interdepartmental transfers. Therefore, we must rely upon "more general policy considerations" to discern the intent of the legislature. "The cardinal rule in interpreting statutes is that the purpose of the act is to be sought and is favored over a consideration which will defeat the manifest object of the act." *Student Asso., U of Wis.-Milw. v. Baum,* 74 Wis.2d 283, 294–5, 246 N.W.2d 622 (1976).

Chapter 16 reveals the State's deep commitment to a strong, efficient merit system and to encouraging people to make state service their career.[2] Sec. 16.01(1), Stats., explicitly sets forth the purpose of the civil service statutes:

"It is the purpose of this subchapter [entitled Civil Service] to provide state agencies and institutions of higher education with competent personnel which will furnish state services to its citizens as fairly, efficiently and effectively as possible."

To achieve this goal, the legislature explicitly sets forth in sec. 16.01(2), Stats., the state policy to maintain a strong coordinated state-wide personnel management program:

"(2) It is the policy of the state to maintain a strong coordinated personnel management program and to assure that positions in the classified service are filled through methods which apply the merit principle, with

---

employee's discharge from the department in which he is on probation is in practical effect a discharge from State employment.

[2] *See* Report of the Employment Relations Study Commission, *Wisconsin Civil Service* (1977).

adequate civil service safeguards. To these ends the bureau of personnel with advice and quasi-judicial assistance by the personnel board shall develop, improve and protect a state-wide personnel management program which assures that the state hires the best qualified persons available and bases the treatment of its employes upon the relative value of each employe's services and his demonstrated competence and fitness."

Thus the legislature views the civil service system as a state-wide system, not a department-by-department system.

The legislature's expressed policy in the civil service statutes is to recruit "on the broadest base consistent with sound personnel management practice," sec. 16.10; to hire "the best qualified person available," sec. 16.01 (2); and to fill vacancies "by competition limited to persons in the classified services" if in the judgment of the Director of the Bureau of Personnel the group of applicants best able to meet the requirements of the position are available within the classified service, sec. 16.15.

Requiring an employee to risk losing the security of his or her position in the classified service in order to advance within the classified civil service creates an obvious disincentive to the employee to accept a promotion and thus conflicts with the legislature's announced policies.

The statutes clearly provide that had Ferguson been promoted or had a change in job status within his department, there would be no effect on his permanent status in class and rights. Sec. 16.22(1)(d), Stats. The majority reasons from this provision that the legislature's silence as to the effect of an inter-departmental transfer means that an employee loses all rights in the civil service system in an inter-departmental transfer. I see no reason to construe the statutes to require that Ferguson lose all rights in the civil service system if he accepts a promotion in an agency across the hall.

I conclude that Ferguson was properly dismissed from his higher position (Information Specialist 3) in which he was on probation. I further conclude that the statutes do not require that Ferguson be returned to his former position (Information Specialist 2) with either the University or the Department of Health & Social Services. I do, however, believe that the statutes require that Ferguson and persons similarly situated be given some protection under the civil service system, balancing the needs of the state and the need to assure the fair treatment of persons in the civil service system.[3]

It is not appropriate for this court, as this case is presented to us, to determine the protections to which Ferguson is entitled. This determination is one which should be made by the appropriate entity to which the legislature has delegated the administration of the civil service statutes.[4]

I would reverse the order of the circuit court and direct the circuit court to remand the cause to the Per-

[3] See, for example, sec. 16.25, Stats., granting restoration and reinstatement privileges to any person who has held a position and obtained permanent status in a class under the civil service law and rules and has separated from service or to any person who separates from a position while serving a probationary period. Neither the parties nor the Board considered whether sec. 16.25, Stats., is applicable to the case at bar. See also Pers. 15.04(1) and Pers. Ch. 16, Adm. Code.

[4] The legislature has charged the Director of the Bureau of Personnel with the effective administration of the laws relating to the civil service and has empowered the Director to promulgate rules for the effective operation of the civil service system, subject to the approval by the Board. Sec. 16.03, Stats. The Personnel Board is authorized, *inter alia*, to make investigations, hold hearings, and issue recommendations on all matters touching the enforcement and effect of the civil service statutes; after investigation the Board may issue orders remanding the matter to the director or agency for appropriate action under the law. Sec. 16.05, Stats.

sonnel Board for further proceedings not inconsistent with this opinion.