Rodney A. ARNESON, Plaintiff-Respondent-Petitioner,

v.

Marcia JEZWINSKI, Personnel Coordinator, Administrative Data Processing, UW-Madison, Durwood Meyer, Assistant Director, Administrative Data Processing, UW-Madison and Dan Thoftne, Computer Operations Manager, Administrative Data Processing, UW-Madison, Defendants-Appellants.

Supreme Court

*No. 95–1592. Oral argument January 6, 1999.—Decided May 5, 1999.*

(Also reported in 592 N.W.2d 606.)

For the plaintiff-respondent-petitioner there were briefs by *Jacqueline Macaulay* and *Macaulay Law Office*, Madison and oral argument by *Jacquelien Macaulay*.

For the defendants-appellants the cause was argued by *Richard Briles Moriarty*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. DONALD W. STEINMETZ, J. The petitioner, Rodney Arneson, seeks review of a court of appeals' decision that reversed the circuit court's denial of the defendants' motion for summary judgment on grounds of qualified immunity. Arneson

contends that the defendants are not entitled to qualified immunity from his 42 U.S.C. § 1983 suit because when they demoted him and suspended him without pay for 30 days following a sexual harassment complaint filed against him by a subordinate employee, they violated his clearly established constitutionally protected property interests in his wages and continuous employment.

¶ 2.  This court is presented with the following question: whether, in April 1990, when the defendants suspended the plaintiff without pay for 30 days and demoted him following a complaint of sexual harassment, they had reason to be aware that their actions would violate Arneson's clearly established constitutional rights. This question demands that we resolve the following issues: did state law clearly establish in April 1990 that Arneson had a property interest in his wages and in his continuous employment and, if so, did federal law clearly establish in April 1990 the amount of due process Arneson was entitled to receive prior to being deprived of his property interests. If the answer to either question is "no", the defendants are entitled to qualified immunity. As we answer "yes" to the first question and "no" to the second, we find that the defendants are entitled to qualified immunity.

I

¶ 3.  The parties agree that for purposes of the qualified immunity inquiry on summary judgment, as we are presented the case, the factual findings made by the Wisconsin Personnel Commission in Arneson's direct appeal of his discipline are undisputed. The direct appeal, which will be detailed more fully below,

has been fully resolved.[1] In describing the background of this case, we draw where appropriate from the Commission's findings.

¶ 4.   Rodney Arneson was a University of Wisconsin employee when, in March 1990, a female employee whom he supervised filed a sexual harassment complaint against him. When the complaint was filed, Arneson was employed by the University of Wisconsin—Madison, Administrative Data Processing (ADP) as a Management Information Specialist Supervisor 4 (MIS 4 supervisor).[2] He had been promoted to the position of MIS 4 supervisor in January 1990, and, at the time of the complaint, was within the statutorily defined probationary period that accompanies promotions within state public employment as provided by Wis. Stat. § 230.28(1)(a) and (am) (1989–90).[3] Prior to the January 1990 promotion, Arneson had attained permanent status in class as an MIS 3 employee[4] and

---

[1] *See Arneson v. University of Wisconsin*, Wis. Pers. Comm. No. 90–0184-PC (May 14, 1992).

[2] The ADP has since been renamed the Department of Information and Technology (DoIT).

[3] All references are to the 1989–90 version of the statutes unless otherwise noted.

[4] We note a discrepancy between the record and the parties' oral arguments with respect to the position from which Arneson was promoted in January 1990. The record, as evidenced most clearly in the Personnel Commission's Findings of Fact, provides that Arneson was promoted from an MIS 3 non-supervisory position to an MIS 4 supervisory position. However, during their oral arguments, the parties appear to have agreed that Arneson was promoted from an MIS 4 non-supervisory position to an MIS 4 supervisory position. As will become clear, since part of the discipline which Arneson claims deprived him of a property interest included a demotion to a position below MIS 3, it matters little for our purposes here whether at the

had been working for the University for approximately nine years.

¶ 5. Arneson was the immediate supervisor of the female complainant, a high school student who worked as a tape operator for the ADP. On March 9, 1990, the female employee brought to work a bridal magazine, and while she was looking at it Arneson began talking and joking with her about the magazine and her wedding plans. Later that evening, the female employee gave him the magazine. When he returned it, Arneson told her that the most interesting thing in the magazine was a girl modeling a bra. Arneson also told her that he owned a camera and enjoyed taking pictures of beautiful things and that he believed that the most beautiful thing was a woman in her bra.

¶ 6. The female employee volunteered to Arneson that she was not interested in modeling for him, but that her sister modeled and might be interested. Arneson asked about the sister's looks and the female employee showed him her sister's picture. Arneson also asked the female employee to call her sister, which she did. Arneson then spoke with the sister and told her that he wanted to take pictures of her wearing a bra and slip, and that he would pay her $20 per hour to model for him.

¶ 7. Arneson further explained that he had taken similar pictures in the past, that he was married, that the photos were for his personal use, and that he could take the pictures at her house, his house, or on campus. The three then made plans to speak about further arrangements on the following Monday.

¶ 8. On that following Monday, March 12, the female employee told Arneson that her sister was not

time of his promotion Arneson was employed within a classification of MIS 3 or MIS 4 non-supervisory.

interested in modeling for him. After a brief discussion, neither Arneson nor the employee again spoke about taking photos.

¶ 9. The female employee did not go to work on Tuesday, March 13, although she returned on March 14. On March 15, the employee notified the defendant Durwood Meyer, Assistant Director of ADP, that Arneson had sexually harassed her. Meyer contacted the defendant Marcia Jezwinksi, ADP Personnel Coordinator, later that same day. On March 17, Jezwinski telephoned the female employee at her home and set up an appointment to speak with both her and her sister.

¶ 10. On Monday, March 19, Jezwinksi interviewed the employee and her sister. Both filled out formal sexual harassment complaints against Arneson, and Jezwinski asked that neither discuss the lawsuit with anyone. However, the next day, the female employee did discuss the sexual harassment with another employee at the ADP. That employee later told yet another employee, who, in turn, told Arneson on March 22 that Arneson was the subject of a sexual harassment complaint.

¶ 11. On March 23, Arneson sought out Jezwinski who confirmed that the female employee had filed a sexual harassment complaint against him. The two then scheduled a meeting between themselves and Arneson's immediate supervisor, the third defendant in this matter, Dan Thoftne, for later in the day.

¶ 12. The Personnel Commission's Findings of Fact described this meeting between Arneson, Jezwinski, and Thoftne as follows:

> The meeting took place as scheduled. At the meeting, Jezwinski asked Arneson questions about his interaction with the employe and her sister regard-

ing taking photos. Jezwinski told Arneson very little about the employe's allegations, except to the extent they were corroborated by Arneson's statements. At the close of the meeting, Arneson was directed to stay away from the employe and not talk to anyone about the matter. The employe was reassigned to the print room.

The commission further found that at this meeting, Arneson was given an opportunity to talk and before the meeting ended Jezwinski told Arneson that while she did not know what was going to happen, any level of discipline from reprimand through suspension or termination was possible.

¶ 13. On April 2, Thoftne and Meyer told Arneson that he was suspended with pay pending investigation of the employee's complaint. A letter of suspension was given Arneson by Thoftne and Meyer in Meyer's office.

¶ 14. On April 19, Arneson was given a letter of discipline. He was called into a meeting with both Thoftne and Meyer, who went through the details of the discipline which included a 30-day suspension without pay and a demotion to a position to be later determined, which was accompanied by a reduction in pay from $15.51/hr. to $12.659/hr. On May 3, 1990, Arneson was informed by letter that he was assigned to a Data Processing Operations Technicians 4 (DPOT4). There is no dispute that this position was below the position which Arneson held prior to his promotion to MIS 4 supervisor.

¶ 15. On May 15, 1990, Arneson filed an appeal of the disciplinary action with the Wisconsin Personnel Commission pursuant to Wis. Stat. § 230.44(1)(c). The Commission Examiner heard testimony over a three-day period in the fall of 1990 and concluded that Arne-

son did not receive his right to predisciplinary due process, and that, in any event, his behavior with the female employee did not warrant the severe discipline he received.

¶ 16.  Subsequently, on February 6, 1992, the full Personnel Commission issued an interim decision and order adopting the hearing examiner's proposed decision and order. The proposed decision included the following conclusions of law:

> 1.  This matter is properly before the Commission pursuant to § 230.44(1)(c), Stats.
> 2.  Respondent [University of Wisconsin System (Madison)] has the burden of proof.
> 3.  Respondent was required to have provided appellant with a predisciplinary hearing sufficient under the standards set forth in *Cleveland Bd. Of Education v. Loudermill*, 470 U.S. 532 [ ] (1985).
> 4.  Respondent failed to provide an adequate predisciplinary hearing.
> 5.  This disciplinary action is defective and must be rejected.

¶ 17.  Based on its conclusion that Arneson was entitled to a predisciplinary hearing and did not receive it, the Commission ordered the University of Wisconsin—Madison to take action consistent with its decision; i.e., to reverse Arneson's discipline and restore him to his promotional position.

¶ 18.  Despite its conclusion that Arneson was denied his due process rights, the Commission deemed appropriate a discussion of the merits of the disciplinary action. It found that because Arneson's actions were not illegal, threatening or intimidating, and did not constitute a "solicitation" nor violate the University's sexual harassment policy, the discipline the University had imposed was excessive. However, the

Commission also found that Arneson had violated other work rules which would have supported a suspension of no more than five days without pay. Of course, this discipline could not be maintained as the University had violated Arneson's right to due process.

¶ 19. Neither party appealed the Commission's ruling and order, and subsequently Arneson and the University entered into a settlement through which Arneson received monetary and equitable relief, attorneys' fees and costs.

¶ 20. Subsequently, Arneson filed the instant action in Dane County Circuit Court, the Honorable Moria G. Krueger, under 42 U.S.C. §§ 1983,[5] 1985(3), and 1988, seeking declaratory and monetary relief from the defendants Jezwinski, Meyer, and Thoftne, in their individual capacities, including punitive damages, based on allegations that they had violated his constitutional right to due process of law when they disciplined him.[6] Specifically, the complained-of deprivation of rights, as described in Arneson's complaint, are the following: 1) defendants' imposition of excessive discipline based on an improperly investigated and false charge of sexual harassment without pre-disciplinary due process, and 2) defendants' failure to provide make-whole relief to plaintiff when ordered to do so by

---

[5] 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[6] The named defendants were not named in Arneson's appeal of his discipline before the Personnel Commission.

the Wisconsin Personnel Commission. Arneson has alleged that both actions were undertaken individually and in concert, were arbitrary and capricious, and infringed on his constitutionally protected property and liberty interests.

¶ 21. Arneson's claim that the defendants failed to provide make-whole relief when ordered to do so apparently had its roots in the negotiations that Arneson engaged in with the University following the Commission's decision that he be reinstated. The circuit court dismissed this claim on the defendants' motion for summary judgment, finding that Arneson had failed to provide any facts demonstrating that the defendants were involved in these negotiations. This issue is not before us on appeal.

¶ 22. The defendants also filed a motion for summary judgment asserting that qualified immunity barred Arneson's remaining claim. The circuit court denied the defendants' motion. This is the issue with which we are now presented.

¶ 23. In its decision, the circuit court identified the rule governing its qualified immunity inquiry: the defendants are entitled to qualified immunity unless the plaintiff's rights were clearly established in the law, such that a reasonable person would be aware that he or she was violating plaintiff's rights. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). In deciding that the defendants were not entitled to qualified immunity, the circuit court looked to decisions of the Wisconsin Personnel Commission for the "clearly established" federal law governing the due process rights claimed by the plaintiff.

¶ 24. At the April 21, 1995, hearing on defendants' motion, the circuit court stated:

I tend to agree with the defendants' reading of the federal cases; that there are some cases in which you might say that there are certain—that there are certain rights that should be given, but I think they're quite distinguishable, there are not bright lights out there in which I could say the defendants should have known this is really what they have done and we have the 7th Circuit cases I referenced earlier that suspension may well be a different animal than termination. *So I can't look at those federal cases and say, yup, these defendants were on notice that they really better do this a certain way as regards Mr. Arneson. And on that basis. . .I can't look to the federal cases to make the decision.*

(Emphasis supplied.)

¶ 25. The circuit court then requested that the defendants present the court with Wisconsin Personnel Commission cases preceding the April 1990 discipline that would support their motion. The court also explained that "the issue I'm looking to is what should form the basis of determining what clearly established law the defendants should have looked to." The two choices the circuit court then considered to be relevant to clearly established law were Wisconsin Personnel Commission cases or the Wisconsin Statutes, and it asked the parties to submit letter briefs in response.

¶ 26. Before the circuit court, in support of a position that it has since apparently abandoned, the defendants argued that the clearly established law may be found in Personnel Commission decisions, and that those decisions predating 1990 demonstrate that the law did not clearly establish a state employee's right to a presuspension hearing. The circuit court disagreed with the defendants.

¶ 27. In denying the defendants' motion, the circuit court noted that some federal law supported

Arneson's position that a suspension be preceded with a due process hearing. Significantly, though, the circuit court relied most heavily upon a decision of the Wisconsin Personnel Commission, noting as it did so that a Sixth Circuit Court of Appeals decision provided that in an extraordinary case, decisions of "other courts" could establish the law. *See Ohio Service Employees Assn. v. Seiter*, 858 F.2d 1171, 1177–78 (6th Cir. 1988).

¶ 28. Relying then upon Commission decisions prior to April 1990, the circuit court found that Arneson's right to due process was clearly established at the time of his suspension, and, therefore, the defendants could not maintain a defense of qualified immunity.

¶ 29. The defendants appealed the circuit court's nonfinal order. The court of appeals declined leave to appeal, and then asked this court to determine under what circumstances denials of qualified immunity interlocutory appeals could be made. This court granted the certification and held that interlocutory appeals from a denial of qualified immunity on 42 U.S.C. § 1983 claims should always be allowed where the denial turns on legal issues and the appealing party timely files a petition for leave to appeal. *Arneson v. Jezwinski*, 206 Wis. 2d 217, 229, 556 N.W.2d 721 (1996).

¶ 30. On remand, the court of appeals, in an unpublished decision, found that both criteria for granting leave to appeal an interlocutory order were met in this case. The court of appeals then reversed the circuit court and held that the defendants were entitled to qualified immunity.

¶ 31. The court of appeals framed the issue before it as whether "at the time of Arneson's disciplinary transfer, either Wisconsin law or federal law clearly granted him an established 'property interest'

either in the position he then occupied or in his former position, which would warrant the conclusion that the defendants did not enjoy qualified immunity from his lawsuit." The court concluded that neither Wisconsin nor federal law so provided.

¶ 32. The court observed that Arneson's claim was somewhat ambiguous: it could be read as a claim that he was deprived rights that accompanied his MIS 4 supervisor position, or in the alternative, a claim that he was deprived rights in his MIS 3 position. The court addressed both. It first found that Arneson had no rights in the MIS 4 supervisor position that were constitutionally protected. Turning to the second alternative, the court concluded that if Arneson was claiming rights to his original position, he had "essentially" been reinstated to that position following the Personnel Commission's finding that he had not been accorded due process. The court of appeals believed that the post-disciplinary procedures by which Arneson was reinstated and provided back pay provided him with sufficient due process protection and that the defendants, therefore, were entitled to qualified immunity.

¶ 33. Arneson appealed that decision and we now affirm the court of appeals' conclusion that the defendants are entitled to qualified immunity.

II

¶ 34. Whether the defendants are entitled to qualified immunity is a question of law that this court decides independently of and without deference to the reasoning of the lower courts. *Penterman v. Wis. Elec. Power Co.*, 211 Wis. 2d 458, 468, 565 N.W.2d 521 (1997); *Barnhill v. Board of Regents*, 166 Wis. 2d 395, 406, 479 N.W.2d 917 (1992). It is a question that is

appropriately resolved at the summary judgment stage, *Penterman*, 211 Wis. 2d at 468–69, and is appropriate when there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2) (1997–98).[7]

¶ 35. Qualified immunity is a judicial doctrine that protects government officials performing discretionary functions from civil liability so long as their conduct does not violate a person's clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. at 818; *Barnhill*, 166 Wis. 2d at 406. The qualified immunity inquiry "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time the action was taken." *Barnhill*, 166 Wis. 2d at 407 (citing *Harlow*, 457 U.S. at 818–19). As we explained in *Barnhill*:

> If the law was not clearly established on the subject of the action when it occurred, then the public official cannot be held to know or anticipate that the conduct was unlawful. On the other hand, if the law was clearly established, then the immunity defense should fail because a reasonably competent public official should have known that the conduct was or was not lawful.

---

[7] Wis. Stat. § 802.08(2) states in relevant part:

The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Id.*; *Harlow*, 457 U.S. at 818–819. Officials who violate the laws that are not clearly established at the time of their actions, regardless of later evolution in the law, are entitled to qualified immunity. *Lojuk v. Johnson*, 770 F.2d 619, 628 (7th Cir. 1985). To be clearly established, case law must clearly and consistently recognize the constitutional right claimed. *Id.*

### *Source of Clearly Established Law*

¶ 36.    The proceedings of this case in the courts below evince some confusion over the source of clearly established law that is to govern a claim brought pursuant to 42 U.S.C. § 1983. Where a plaintiff alleges the violation of a constitutionally protected property interest in a job, two sources of law are considered, each which governs a separate part of the qualified immunity inquiry. First, as a threshold issue, whether the plaintiff has a substantive property interest in his or her employment is determined exclusively by state law. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Flynn v. Kornwolf*, 83 F.3d 924, 926 (7th Cir. 1996); *Vorvald v. School Dist. of River Falls*, 167 Wis. 2d 549, 556, 482 N.W.2d 93 (1992). Therefore, whether the plaintiff has a property interest in his wages and in his continuous employment is a question to be answered by looking to state law.

¶ 37.    However, "federal constitutional law determines whether that [substantive property] interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) (citing *Roth*, 408 U.S. at 577; *Perry v. Sindermann*, 408 U.S. 593, 602 (1972)). Federal law governs the question of how much due process Arneson must be accorded before he is deprived of his property interests. As have

the parties, the courts below expressed some uncertainty as to where the source of clearly established federal law on this question may be found.

¶ 38. The United States Supreme Court has not dispositively determined the question. The most definitive word it has offered may be found in *Harlow*, where the Court avoided the question of what decisional law would establish the "state of the law," but implied that an evaluation of the federal law could only be made by reference to the decisions of the United States Supreme Court, the federal courts of appeals, or the federal district courts. *Harlow*, 457 U.S. at 818 n.32.

¶ 39. The Dane County Circuit Court, in deciding that Personnel Commission decisions could be the source of clearly established law, relied upon the following discussion from a Sixth Circuit Court of Appeals decision which stated that

> to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. *In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law*. For the decisions of other courts to provide such 'clearly established law,' these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

*Seiter*, 858 F.2d at 1177–78 (emphasis supplied, as it was in the circuit court decision). The circuit court's reliance on this language is misplaced, for the *Seiter* court's reference to "other courts" may include the persuasive authority of other circuit courts of appeals, and

perhaps other district courts, but could certainly not have referred to decisions of state administrative agencies. *See e.g., Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995)(the Seventh Circuit found unpersuasive the Sixth Circuit's "aside" that a *district* court could clearly establish the law).

¶ 40.   We have discovered no cases in which the source of clearly established federal law included decisions of administrative agencies such as the Wisconsin Personnel Commission. And while Arneson relies in part on decisions of the Commission, he has provided us with no authority for his view that those decisions are authority on the question of federal law. Decisions of state administrative bodies do not create federal law; nor do they provide the contours of clearly established federal law. Hence, we do not consider these administrative decisions in determining whether the defendants knew what the clearly established federal law governing his due process rights was at the time they disciplined Arneson.

¶ 41.   While of greatest value, a Supreme Court decision on "all fours" is not necessary to overcome a qualified immunity defense. In light of the Supreme Court's decision in *Harlow* which left unanswered the source of federal law, the Seventh Circuit has observed that "reliance on Supreme Court decisions alone might be inappropriate (unless they are the only cases ruling on the question), because they are infrequent in comparison to the decisions of the district and appellate courts, and this infrequency could have the practical effect of converting qualified immunity into absolute immunity." *Benson v. Allphin*, 786 F.2d 268, 275 (7th Cir. 1986). Furthermore, the United States Supreme Court has acknowledged when it was itself determining the source of clearly established law, that "for

purposes of determining whether a constitutional right was clearly established, the Court may look to the law of the relevant circuit at the time of the conduct in question." *Siegert v. Gilley*, 500 U.S. 226, 243 (1991)(citing *Davis v. Scherer*, 468 U.S. 183, 191–92 (1984)).

¶ 42. At a minimum, defendants should be held aware of the controlling authority of this state, as well as the highly persuasive authority found within the Seventh Circuit. However, the absence of controlling authority on point should not be dispositive that the law is not clearly established. *See Donovan v. City of Milwaukee*, 17 F.3d 944, 952 (7th Cir. 1994) (citing *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 431 (7th Cir. 1989)). Instead, where there is no controlling authority on point, the parties must point to "such a clear trend in the caselaw that [they] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Id.* (quoting *Cleveland-Perdue*, 881 F.2d at 431). To so show, "rulings in other circuits are instructive on what the law is as to constitutionally protected rights." *Spreen v. Brey*, 961 F.2d 109, 112 (7th Cir. 1992). *But see Kolman v. Sheahan*, 31 F.3d 429, 434, (7th Cir. 1994)(the court intimated that if the Seventh Circuit did not have an analogous case, the defendant would be qualifiedly immune for his or her actions).

¶ 43. In considering the weight to accord district court decisions, we recognize that by themselves, they cannot "*clearly* establish a constitutional right," *Anderson*, 72 F.3d at 525 (emphasis in the original)(citing *Jermosen v. Smith*, 945 F.2d 547, 551 (2nd Cir. 1991)), for they "have no weight as precedents, no authority." *Anderson*, 72 F.3d at 525. However,

[t]hey are evidence of the state of the law. Taken together with other evidence, they might show that the law had been clearly established. But by themselves they cannot clearly establish the law because, while they bind the parties by virtue of the doctrine of res judicata, they are not authoritative as precedent and therefore do not establish the duties of nonparties.

*Anderson*, 72 F.3d at 525.

¶ 44.   In summary, we believe that on the question governed by federal law, and with a view to the guidelines described above, this court should, as does the Seventh Circuit, "look to whatever decisional law is available to ascertain whether the law has been clearly established." *McGrath v. Gillis*, 44 F.3d 567, 570 (7th Cir. 1995)(citing *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988)(en banc)). A " 'sufficient consensus based on all relevant case law, indicating that the officials' conduct was unlawful' is required." *Id.* (quoting *Henderson v. DeRobertis*, 940 F.2d 1055, 1058–59 (7th Cir. 1991)(quoting *Landstrom v. Illinois Dept. of Children & Family Serv.*, 892 F.2d 670, 676 (7th Cir. 1990))).

## III

■

¶ 45.   Although qualified immunity is an affirmative defense, once raised, the plaintiff in a 42 U.S.C. § 1983 claim bears the burden of demonstrating by closely analogous case law that the defendants have violated his clearly established constitutional right. *See Penterman*, 211 Wis. 2d at 469 (citing *Burkes v. Klauser*, 185 Wis. 2d 308, 327, 517 N.W.2d 503 (1994)).

¶ 46.   As a first step, we look to see whether plaintiff's complaint, even when accepted as true, states a

cognizable violation of constitutional rights. If it does not, the plaintiff's claim fails. *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 472 (7th Cir. 1997)(citing *Young v. Murphy*, 90 F.3d 1225, 1234 (7th Cir. 1996)). This is because "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert*, 500 U.S. at 232.

¶ 47.  In a section 1983 claim for a violation of procedural due process, a plaintiff must show a deprivation by state action of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Penterman*, 211 Wis. 2d at 473 (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). This showing requires that there exists a liberty or property interest which has been interfered with by the State and that the procedures attendant upon that interference were constitutionally insufficient. Should Arneson make this showing, in order to overcome the qualified immunity defense, he must also demonstrate that both the interest and the procedures attendant upon the deprivation of his interest were clearly established in 1990, such that reasonable officials in the defendants' positions would have been aware their actions violated Arneson's rights.

### *What property interests has Arneson alleged, and were those interests clearly established in 1990?*

¶ 48.  We note that the parties, and the courts below, did not coherently identify the precise property interest Arneson claimed. This interest must be clearly identified before we can engage in a consideration of

the constitutional right Arneson claims has been violated.

¶ 49.   Despite the defendants' arguments in both their briefs and at oral argument, we do not understand Arneson to be claiming any protected interest in his position as an MIS 4 supervisor. Instead, we find that the property interest which Arneson claims is constitutionally protected is related to his employment in the MIS 3 non-supervisor position he held *prior* to his promotion in January 1990.

¶ 50.   At oral argument, Arneson admitted that he did not have a constitutionally protected property interest in his MIS 4 supervisory position, which he conceded was a position in which he served as a probationary employee pursuant to Wis. Stat. § 230.28(1)(a) and (am), and, therefore, a position in which he had no protection. We therefore direct our discussion to his argument that when he was promoted, he maintained his statutory rights to the position he held prior to the promotion, the non-supervisor MIS 3 position.

¶ 51.   In *Roth*, 408 U.S. 564, the United States Supreme Court explained that property interests are not created by the Constitution, but rather, "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577; *see also, Vorvald*, 167 Wis. 2d at 556 (in determining whether one has a property interest in a job, this court examines state law). Thus, the property interest Arneson had in his pre-promotion position, if any, is to be determined from an examination of the Wisconsin Statutes, and in particular Wis. Stat. Chapter 230, which governs State

Employment Relations, as well as our case law interpreting the statutes.

¶ 52.   Pursuant to Wis. Stat. § 230.34(1)(a), a person who has permanent status in class "may be removed, suspended without pay, discharged, reduced in base pay or demoted only for just cause." Wis. Stat. § 230.34(1)(a). An employee who may be dismissed only for "just cause" has a property interest in continued employment which is protected by the due process clause of the federal constitution. *Loudermill*, 470 U.S. at 538–41; *see also State ex rel. DeLuca v. Common Council*, 72 Wis. 2d 672, 678, 242 N.W.2d 689 (1976); *Phares v. Gustafsson*, 856 F.2d 1003, 1010 (7th Cir. 1988). The parties here do not dispute that as an MIS 3 employee just prior to his promotion, Arneson did have permanent status in class, and as such, a property interest in continued employment that was protected by the Due Process Clause of the Constitution.

¶ 53.   The parties are also in agreement that the property interest an employee has in his or her supervisory position as a probationary promotion employee is governed by Wis. Stat. § 230.28(1)(a) and (am) which together provide that an employee promoted to a supervisory position must serve a one-year probationary period, unless waived after six months, during which time, "dismissal may be made at any time" without cause. Wis. Stat. § 230.28(1)(a) and (am).[8]

---

[8] Wis. Stat. § 230.28(1)(a) provides in relevant part:

All original and all promotional appointments to permanent, sessional and seasonal positions, with the exception of those positions designated as supervisor or management under s. 111.81, in the classified service shall be for a probationary period of 6 months. . . . Dismissal may be made at any time during such periods.

¶ 54. The parties' point of dispute is the effect of the promotion, and the accompanying probationary period, on Arneson's property interests in his *pre-promotion* position, the only position for which Arneson is claiming constitutional protection. The defendants argue that when Arneson was promoted from his MIS 3 position to the MIS 4 supervisor position, he forfeited his permanent status that he held as an MIS 3 employee. That is, they argue that Arneson lost the protection of his permanent status with his promotion when he fell subject to the probationary period all promoted employees to supervisory positions are subject to under Wis. Stat. § 230.28(1)(a) and (am). In their view, any permanent employee could be terminated without cause upon that employee's acceptance of a promotion, regardless of that employee's length of service with the state.

¶ 55. The defendants are in error, for they have not given appropriate weight to Wis. Stat. § 230.28(1)(d), which must be read in *pari materia* with § 230.28(1)(a) and (am). We consider the subsection here in determining the extent of Arneson's property interests in his employment:

> A promotion or other change in job status within an agency shall not affect the permanent status in class and rights, previously acquired by an employe within such agency.

Wis. Stat. § 230.28(1)(d).

Wis. Stat. § 230.28(1)(am) provides in relevant part that "[a]ll probationary periods for employes in supervisory or management positions are one year unless waived after 6 months . . . ."

394

¶ 56. When Arneson was promoted within ADP, he had already acquired permanent status in class and rights as an MIS 3 employee and therefore he retained his permanent status pursuant to the dictates of Wis. Stat. § 230.28(1)(d). And as an employee with permanent status in class, the defendants were required to abide by Wis. Stat. § 230.34(1)(a) when they disciplined him, just as they would have been required to do when disciplining any other permanent status employee.

¶ 57. Despite the statute's unambiguous and express language, the defendants maintain that our decision in *DHSS v. State Personnel Bd.*, 84 Wis. 2d 675, 267 N.W.2d 644 (1978), requires a different outcome. They argue that under *DHSS*, Arneson forfeited his property interest in permanent employment with the ADP when he was promoted because the case precludes *any* promoted state employee from carrying with him or her to his or her new position the previously acquired permanent status.

¶ 58. The defendants misread our decision in *DHSS*, which, in fact, supports Arneson. In *DHSS*, this court was presented with, among other issues, the question of whether the State Personnel Board had jurisdiction to hear the plaintiff's appeal alleging that his discharge from classified service within state employment was not for just cause. As here, the plaintiff in *DHSS* had acquired permanent status in class *prior* to accepting a promotion. While in the statutorily-defined probationary period governing the promoted position, the plaintiff was terminated. The plaintiff appealed the dismissal, requesting of the board consideration of whether his termination was with cause.

¶ 59. This court held that the board only had jurisdiction to hear appeals from employees with per-

manent status in class, *DHSS*, 84 Wis. 2d at 680, and that the plaintiff, due to his promotion, did *not* have such permanent status due to his "inter-departmental promotion." *Id.* at 680–82.

¶ 60. In determining that the plaintiff did not have any permanent status, this court first turned to the predecessor of the current Wis. Stat. § 230.28(1)(a), Wis. Stat. § 16.22(1)(a) (1975), which provided that "[a]ll original and all promotional appointments to permanent. . .positions in the classified service shall be for a probationary period of 6 months. . . .Dismissal may be made at any time during such periods." We then recognized that an exception to § 16.22(1)(a) appeared in § 16.22(1)(d) (1975), the equivalent of the current § 230.28(1)(d), which provided that "[a] promotion or other change in job status within a department shall not affect the permanent status in class and rights, previously acquired by an employe within such department." Wis. Stat. § 16.22(1)(d) (1975). In considering how the two provisions worked with one another, we stated that

> [s]ec. 16.22(1)(a) and (d), Stats., requires that promotional appointments in the classified service are subject to a six month probationary period, and possible discharge from the classified service. If an employe is promoted within a department, he may be dismissed from the new position during the probationary period. *If dismissal from the new position occurs, the employe must be reinstated to his former position or a similar position within that department. There is no effect on, '. . . permanent status in class and rights, previously acquired,' if the promotion is intra-departmental.*

*DHSS*, 84 Wis. 2d at 681 (emphasis supplied). We then held that the plaintiff in *DHSS* did *not* have permanent

396

status in class because the plaintiff in *DHSS* was promoted *inter*-departmentally and therefore forfeited his permanent status previously attained.

¶ 61.   Quite unlike the plaintiff in *DHSS*, Arneson was promoted within the *same* agency in which he first attained his rights in class.[9]Under the express language of the statute, and our interpretation of the statute in *DHSS*, it is clear that Arneson retained his permanent status in class and rights as an MIS 3 non-supervisor when he was promoted, within the same agency, from an MIS 3 non-supervisor position to an MIS 4 supervisor position. Because he retained this permanent status in class and rights, any discipline affecting his class and rights in his MIS 3 position could be maintained only for "just cause" in accord with Wis. Stat. § 230.34(1)(a). Therefore, Arneson had a property interest in his MIS 3 position that was clearly established in April 1990.

¶ 62.   Our inquiry on qualified immunity must do more than reach this conclusion, however. As Arneson was not terminated from his job, he cannot be claiming a property interest in his continued employment, the property interest that is affected when an employee is terminated. Instead, we find the following: First, his allegation that he was demoted without due process of law is a claim that he has a property interest in the amount of wages commensurate with the MIS 3 position. Second, his allegation that he was suspended

---

[9]We note that one difference between Wis. Stat. § 16.22(1)(d) (1975) and the current Wis. Stat. § 230.28(1)(d) is that in the earlier version of the statutes, an employee retained his or her permanent status when promoted within the same "department," whereas in the current version, an employee retains his or her permanent status when promoted within the same "agency."

397

without pay without due process of law is a claim that he has a property interest in *continuous* employment. In other words, this latter claim is that he had a significant private interest in the uninterrupted receipt of his paycheck. *See Ibarra v. Martin,* 143 F.3d 286, 289 (7th Cir. 1998); *see also Gilbert v. Homar,* 520 U.S. 924, 932 (1997).

### *What procedural safeguards are attendant upon state interference with property interests in continuous employment and wages, and were those safeguards clearly established in 1990?*

¶ 63.   The defendants argue that neither of these property interests are protected by the constitution, relying upon the recent United States Supreme Court decision in *Gilbert* in which the Court wrote that although it had "previously held that public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process, [it has] not had occasion to decide whether the protections of the Due Process Clause extend to discipline of tenured employees short of termination." *Gilbert,* 520 U.S. at 928–29 (internal citations omitted). The defendants suggest that this statement by the Court in 1997 dispositively demonstrates that the law in 1990 did not clearly establish a tenured employee's right to due process prior to discipline short of termination.

¶ 64.   We disagree. As early as 1972, federal law clearly established that a property interest arises for *the purposes of the due process clause,* that is, the property interest is constitutionally protected, "if there are such rules or mutually explicit understandings that support [a] claim of entitlement to the benefit. . . ." *Sindermann,* 408 U.S. at 601 (emphasis supplied). Wis-

consin Stat. § 230.34(1)(a) provides these rules, and, accordingly, the due process clause protections must accompany demotions and suspensions with pay. *See Williams v. Com. of Ky.*, 24 F.3d 1526, 1538 (6th Cir. 1994)("Supreme Court cases decided before [May 1991] are clear that [statutes providing that classified employees can't be dismissed, demoted, suspended or otherwise penalized except for cause] create property interests protected by the Fourteenth Amendment."); *see also Sower v. City of Fort Wayne, Indiana*, 737 F.2d 622, 624 (7th Cir. 1984) (firefighters who by statute and ordinance could not be demoted without just cause had a property interest which they could not be deprived of without due process of law).

¶ 65.    Therefore, since Arneson had a property interest in both the wages which are commensurate with his MIS 3 position and in continuous employment within the MIS 3 position, and these property interests were clearly established in 1990, they were protected by the Due Process Clause and the State could not interfere with them without according him the process he was due.

¶ 66.    "Once it is determined that the Due Process clause applies, 'the question remains what process is due.' " *Loudermill*, 470 U.S. at 541 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The amount of process due is a matter of federal constitutional law. *Loudermill*, 470 U.S. at 541.

¶ 67.    So far, we have concluded that Arneson had property interests which were protected by the due process clause. However, this finding does not sufficiently identify the precise nature of the claimed constitutional violation. To present a cognizable claim, Arneson must also show that the amount of due pro-

cess that defendants were required to accord him was clearly established in 1990.

¶ 68.   It is not enough that Arneson allege a violation of a constitutional right in the abstract. The constitutional right alleged to be violated must be specific. As the Supreme Court has stressed,

> the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

*Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

¶ 69.   " 'In a procedural due process claim, it is not the deprivation of property or liberty that is unconstitutional; it is the deprivation of property or liberty without due process of law—without adequate procedures' " that is unconstitutional. *D'Acquisto v. Washington*, 640 F.Supp. 594, 606 (1986)(quoting *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 678–679 (1986)(Stevens, J., concurring)(emphasis in the original)). If the adequacy of procedures attendant upon a suspension and demotion were not clearly established in 1990, then the defendants are entitled to qualified immunity.

¶ 70. In order to show that the law was "clearly established" for qualified immunity purposes, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right. . .[I]n light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640; *see also McGrath*, 44 F.3d at 570. "[T]he 'clearly established law' must be sufficiently analogous [to the plaintiff's current situation] to provide the public official with guidance as to the lawfulness of his or her conduct." *Barnhill*, 166 Wis. 2d at 408. The law must be clear in relation to the specific facts confronting an official at the time of the official's action. *Rakovich*, 850 F.2d at 1209 (citing *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir. 1987)).

¶ 71. In this particular case, we must decide whether a reasonable official would have known that the holding of an informal meeting, before which Arneson knew that a particular female subordinate employee had made a complaint against him concerning sexual harassment, and during which Arneson was asked specific questions regarding his interest in taking photos of the employee and her sister and was told nothing about the employee's allegations except to the extent that they were corroborated by Arneson's statements, and Arneson was informed of a broad range of discipline that could result from the complaint near the end of the meeting, violated clearly established due process rights that were to be accorded an employee prior to suspension and demotion. *See Price v. Brittain*, 874 F.2d 252, 260 (5th Cir. 1989) (citing *Anderson*, 483 U.S. at 107).

¶ 72. Arneson relies almost exclusively upon *Loudermill* as clearly established law that at a mini-

mum, he was entitled to notice and an opportunity to respond to the charges prior to his discipline. In *Loudermill*, the Court held that prior to termination, "[t]he tenured public employee is entitled to oral and written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* As the Court explained:

> An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)(emphasis in the original); see *Bell v. Burson*, 402 U.S. 535, 542 (1971). This principle requires 'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment.

*Loudermill*, 470 U.S. at 542.

¶ 73.   The defendants disagree with Arneson that *Loudermill* is dispositive and argue that the facts of *Loudermill* are not sufficiently analogous to the circumstances then facing the defendants to make them aware that they would violate his constitutional rights by providing the process that they in fact gave him. They argue that the minimum due process requirements as set forth in *Loudermill* are applicable only where a person is terminated from his or her tenured position. Therefore, *Loudermill* is not clearly estab-

lished law on the question before this court because Arneson was not terminated from his employment.

¶ 74. We agree with the defendants that *Loudermill* does not involve property interests which are as significant as one's continued employment, and therefore *Loudermill* does not clearly establish the process due an employee disciplined short of termination. The Court's discussion in *Loudermill* foreshadowed this conclusion when it stated that " '[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings' " *Loudermill*, 470 U.S. at 545 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)).

¶ 75. We do recognize that a 30-day suspension without pay and a permanent reduction in pay of nearly $3 per hour is a significant property interest that must be safeguarded. However, it is not as significant as the severity of depriving someone of the means of livelihood, as is the result in a termination.

¶ 76. The United States Supreme Court has emphasized repeatedly that due process is a flexible concept in that its requirements vary depending on the circumstances of each case. *Gilbert*, 520 U.S. at 930 (citing *Morrissey*, 408 U.S. at 481). It "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Id.* (citing *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895 (1961)). Indeed, the Court's decisions, including its decision in *Loudermill*, have recognized that the determination of what process is due includes the balancing of three distinct factors:

> 'First, the private interest that will be affected by the official action; second, the risk of an erroneous

403

deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.' *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

*Gilbert*, 520 U.S. at 931–32; *see also Loudermill*, 470 U.S. at 542–543.

¶ 77.   Because balancing of competing interest is necessary, plaintiffs face a high hurdle in demonstrating that the law is clearly established in any given case. The federal circuit courts of appeals have observed that "allegations of constitutional violations that require courts to balance competing interests may make it more difficult to find the law 'clearly established.'" *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)(citations omitted). And as the Seventh Circuit has explained:

> it would appear that there is one type of constitutional rule, namely that involving the balancing of competing interests, for which the standard may be clearly established, but its application is so fact dependent that the "law" can rarely be considered "clearly established." In determining due-process requirements for discharging a government employee, for example, the courts must carefully balance the competing interests of the employee and the employer in each case. Thus, the Supreme Court has consistently stated that one can only proceed on a case-by-case basis and that no all-encompassing procedure may be set forth to cover all situations. It would appear that, whenever a balancing of interest is required, the facts of the existing caselaw must closely correspond to the contested action before the defendant official is subject to liability under the [sic] *Harlow*. . . .[Q]ualified immunity typically casts a wide net to protect gov-

404

ernment officials from damage liability whenever balancing is required.

*Benson,* 786 F.2d at 276 (internal citations and footnotes omitted).

¶ 78.  Of course, that balancing is required is not to say that defendants will always be entitled to qualified immunity, for there are some circumstances in which the law is so clearly established as to leave no doubt in an official's mind that his or her action would violate a constitutional right. For instance, given *Loudermill,* where the state has no arguably significant interest in quick discipline, a tenured employee's interest in continued employment is of such significance that he or she must receive the requirements of *Loudermill.* But as we have already noted, the facts of the instant case are not sufficiently analogous to those in *Loudermill* for that case to present the defendants with clearly established law on the circumstances they then faced.

¶ 79.  Arneson argues that he has identified closely analogous law which established in April 1990 that property rights are implicated in suspensions and demotions. To the extent that he argues that suspensions and demotions are property interests protected by the Due Process Clause, we agree. However, the cases are not closely analogous law on the question of how much due process the defendants were required to give him. *Castelaz v. City of Milwaukee,* 94 Wis. 2d 513, 520–23, 289 N.W.2d 259 (1980), *Hanson v. Madison Services Corp.,* 150 Wis. 2d 828, 840–46, 443 N.W.2d 315 (Ct. App. 1989), and *McGraw v. City of Huntington Beach,* 882 F.2d 384, 389 (9th Cir. 1989), each involve employees who were terminated, not disciplined short of termination, and discuss, as does *Loudermill,* pretermination due process requirements. They are, as is

405

*Loudermill*, not clearly analogous on the question the defendants faced. And while *Narumanchi v. Bd. of Trustees of Connecticut State Univ.*, 850 F.2d 70 (2nd Cir. 1988), and *Gillard v. Norris*, 857 F.2d 1095 (6th Cir. 1988), both involve employees who were disciplined short of termination, neither establishes the minimum process due such an employee—at best they stand for the proposition that *some* due process must be provided an employee, and even then the court in *Gillard* held that a suspension without pay for three days was *de minimus* and entitled the employee to no procedural safeguards. *Id.* at 1098.

¶ 80.   The Court of Appeals for the Sixth Circuit, in *Williams v. Commonwealth of Kentucky*, 24 F.3d 1526 (1994), provides us with a helpful inquiry into a qualified immunity defense under circumstances similar to those here. In *Williams*, the court was faced with the question of whether defendants were entitled to qualified immunity when they did not give the process due under *Loudermill* prior to demoting an employee. The court agreed with the defendants in the action that "[b]ecause the process due varies with the quality and extent of the deprivation of a property right. . .*Loudermill* did not clearly establish that [plaintiff] had a right to notice and hearing before her demotion." *Id.* at 1539. The court wrote:

> 'Not every deprivation of liberty or property requires a predeprivation hearing or a federal remedy.' *Ramsey v. Board of Educ.*, 844 F.2d 1268, 1272 (6th Cir. 1988). In fact, the *Loudermill* Court noted that '[t]here are, of course, some situations in which a postdeprivation hearing will satisfy due process requirements.' *Loudermill*, 470 U.S. at 542 n.7, [ ] (citing *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, [ ] (1950) and *North Am. Cold Storage Co.*

> *v. Chicago*, 211 U.S. 306 [ ] (1908)). Because deter-
> mining what process is due in a given case involves
> the balancing of several interests, including the
> nature of the property interest involved, we cannot
> say that a reasonable public official should have
> known from the *Loudermill* case that its require-
> ment of notice and hearing prior to termination of
> employment applied with equal force to a demotion.

*Id.* Since it did not believe that *Loudermill* was the closely analogous case required to clearly establish the law, the court then searched for opinions of its own circuit, and the opinions of other circuits, to find a case that did clearly establish that *Loudermill* predepriva-tion requirements apply to demotions.

¶ 81.    The court found unhelpful the two cases decided by its own circuit which "merely state the rule of *Loudermill* and determine that the rule was com-plied with in those cases." *Id.* at 1540. It also found that in two other circuits (First and Fifth), that through dicta they had indicated without discussion that they would apply *Loudermill* to demotions. *Id.* at 1541. These cases were also considered not to have clearly established federal law on the question.

¶ 82.    The court did find two cases from outside the Sixth Circuit in which district courts, following a balancing of the competing interests, found that a ten-ured public employee is entitled to a *Loudermill* hearing before being demoted. *Id.* (citing *Williams v. City of Seattle*, 607 F.Supp. 714, 720–21 (W.D. Wash. 1985); *DelSignore v. DiCenzo*, 767 F.Supp. 423, 427–28 (D.R.I. 1991)). However, it found that these two deci-sions were "not 'so clearly foreshadowed by' *Loudermill* or opinions in [the Sixth Circuit] 'as to leave no doubt in the mind of a reasonable officer that' not giving a ten-ured employee notice and hearing before a demotion

would violate the employee's due process rights." *Id.* (citation omitted).

¶ 83. We have found that Seventh Circuit cases, decided following Arneson's discipline, serve as evidence that the due process requirements attendant upon deprivations of property interests less significant than continued employment may be less than that required of *Loudermill* for terminated employees. In *Domiano v. Village of River Grove*, 904 F.2d 1142 (7th Cir. 1990), the Seventh Circuit considered whether providing a tenured employee the courtesy of a telephone call before termination was a violation of the employee's right to a pretermination hearing. The court found that such a violation had occurred, but it also intimated that without running afoul of the due process clause, the employer could have *suspended* the employee without a hearing until he had an opportunity to respond. *Id.* at 1149. And had the employer provided the employee with a post-termination hearing, the court stated that the necessary scope of its pretermination hearing would also have been narrower. *Id.*

¶ 84. In another case, the Seventh Circuit explicitly partook of the balancing of interests under the test in *Mathews*. In *Chaney v. Suburban Bus Division of the Regional Transportation Authority*, 52 F.3d 623 (7th Cir. 1995), the court reviewed the due process procedures required to support a suspension of a bus driver who was involved in an accident. Following the accident, and without a hearing, the bus driver was suspended immediately without pay pending the results of alcohol and drug tests. *Id.* at 626. Even after the results of the test proved that the driver had not been under the influence of either substance, his suspension and the investigation continued. *Id.*

408

¶ 85.   After weighing the three *Mathews'* factors, and concluding that the state had a greater interest in the safety of the public than the driver in his continuous employment, the court held that the prior notification to the driver that he would remain suspended pending further investigation was deemed sufficient due process under the circumstances:

> [W]e have little trouble concluding that due process did not mandate giving [the driver] additional notice or a hearing before [the employer] suspended him. The [driver's] interest in avoiding a suspension is significant. Nonetheless, the [driver] was on notice as to why he was being suspended and [the employer's] interest in both managerial efficiency and in public safety clearly outweigh [the driver's] interest in a presuspension hearing. The Constitution does not mandate additional protections at this stage.

*Id.* at 628.

¶ 86.   While both of the Seventh Circuit cases, and *Williams* in the Sixth Circuit, were decided following the defendants' discipline of Arneson and cannot be used to show whether the law was clearly established in 1990, they do serve as evidence that in 1990 the breadth of *Loudermill* was unclear as to the question of the necessary process due an employee prior to discipline short of termination. As the court in *Williams* stated:

> Although *Loudermill's* analysis should be applied to determine if [the plaintiff] was entitled to a predeprivation hearing, it is not yet clear how this analysis would come out in the demotion setting as opposed to the discharge setting. *Loudermill* recognized that there are some property interests for which a postdeprivation hearing will satisfy due

> process, but by balancing the competing interests the Court found that a predeprivation hearing must be provided before a tenured public employee is discharged. In a demotion case the balancing of competing interests may or may not compel a different result.

*Williams*, 24 F.3d at 1541.

¶ 87.  We cannot say that given the ambiguity of the case law governing suspensions and demotions in 1990 that the unlawfulness of not providing a predemotion or presuspension hearing would have been apparent to a reasonable official at the time Arneson was disciplined. *See Williams*, 24 F.3d at 1541.

¶ 88.  Under the specific circumstances of this case, we find that in 1990, federal law did not clearly establish the amount of due process a tenured employee was entitled to receive prior to being suspended and demoted. Therefore, the defendants are entitled to qualified immunity. Although we agree with the result reached by the court of appeals, we do so on different grounds.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 89.  CHIEF JUSTICE SHIRLEY S. ABRAHAMSON did not participate.